IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**SAVANNAH NICOLE TRIPLETT**     **PLAINTIFF**

**V.**     **CIVIL ACTION NO. 1:23-CV-128-DAS**

**COMMISSIONER OF SOCIAL SECURITY**     **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

This cause is before the court on the plaintiff's complaint for judicial review of an unfavorable final decision by the Commissioner of the Social Security Administration regarding her application for supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Fifth Circuit Court of Appeals. The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard and considered oral argument, finds the decision of the Commissioner of Social Security should be affirmed.

### 1. THE DECISION

The plaintiff, Savannah Nicole Triplett, filed for benefits on November 24, 2020, alleging onset of disability commencing on April 24, 2020, but later amended the date of application. The Social Security Administration denied the claim initially and on reconsideration. Following the hearing, the ALJ issued an unfavorable decision on February 24, 2023. (Dkt. 10 p. 16-26).[1] The Appeals Council denied the request for review, and this timely appeal followed.

---

[1] All references are to the administrative record using the court's numbering system rather than the administrative numbering.

The ALJ found Triplett had the following severe impairments: non-compaction cardiomyopathy, mild intellectual disorder, and schizophrenia. The ALJ found she retained the residual functional capacity (RFC) to perform light work, except she can lift, carry, push, and pull twenty pounds occasionally, and twenty pounds frequently, and can sit, stand, and walk for six hours. Triplett can climb ramps, stairs, ladders, ropes, or scaffolds occasionally, but can never operate a motor vehicle. She can understand, remember, and carry out simple, routine, and repetitive tasks and can make simple work-related decisions regarding changes in work settings. She can interact with supervisors and coworkers on an occasional basis; but can never work with the general public. She should work with objects not people and can perform no tandem or group tasks. R. p. 21.

The ALJ found Triplett has no past relevant work. The claimant was twenty-one years old and has at least a high school education. Based on the testimony of the vocational expert, the ALJ found Triplett could do other jobs that exist in substantial numbers in the national economy, namely, assembler, which is light, unskilled work (18,000 jobs); cleaner, which is light, unskilled work (100,000 jobs); and silverware wrapper, which is light, unskilled work (22,000 jobs). The ALJ, therefore, determined that Triplett was not disabled.

## 2. ANALYSIS

### A. Error in Review and Findings on Community Counseling Records

In the first of four errors urged in this appeal, the plaintiff asserts the ALJ failed to review and properly evaluate all of Triplett's treatment records with the Community Counseling Services (hereafter CCS). She argues the ALJ cherry-picked the record to find some slight evidence to support a denial of benefits, while ignoring overwhelmingly favorable evidence in the record.

While the substantial evidence standard is a low appellate bar, the court must "scrutinize the record in its entirety to determine the reasonableness of the decision ... and whether substantial evidence exists to support it." *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). The court looks to all the evidence in the record and not just the medical evidence. *Perez v. Sec' of Health and Hum. Services*, 958 F.2d 445, 446 (1st Cir. 1991). This court must be conscious of the notable difference between "substantial evidence" and "substantial evidence on the record as a whole." *Jackson v. Hartford Acc. and Indem. Co.,* 422 F. 2d 1272, 1277 (8th Cir. 1970). Looking to see if there is "substantial evidence on the record as a whole" involves more scrutiny because "[t]he substantiality of evidence must take into account whatever evidence in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). If, however, the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Richardson*, 402 U.S. at 390.

The plaintiff urges the court to find the ALJ either missed or failed to adequately review the plaintiff's voluminous treatment records at CCS. This court finds that a review of the decision rebuts any suggestion that the ALJ missed any part of the records. As the plaintiff points out the therapy records are scattered in the administrative record and are not in chronological sequence. In addition to the normal recitation that the judge has reviewed the records, the decision specifically references every segment of the administrative record containing CCS treatment records and recites information included in each of those sections.

The plaintiff argues that if the ALJ had more carefully reviewed the records she would have seen an overwhelming number of abnormal findings and ultimately decided that Triplett was disabled. However, the court finds, as set forth below, that the ALJ's decision is thorough and acknowledges both the findings that support the ultimate decision denying benefits and the records

3

that would support a favorable finding. The decision taken, as a whole, sets out a balanced, accurate synopsis of the record and provides a rational explanation for how the judge resolved conflicts in the evidence to arrive at the decision to deny benefits.

The ALJ referred to the records and testimony, including the CCS records, in finding moderate limitations in Triplett's ability to interact based in part on the CCS reports of anger issues and conflicts with others. The ALJ discussed the CCS records in finding only mild limitations in concentrating, persisting, and maintaining pace. The court's review of the CCS records shows Triplett was sometimes distracted, but there are more times when her concentration is noted to be average. The decision also discussed in detail a sampling of her CCS records spread across the relevant time.

The central question for the ALJ was whether Triplett could work, notwithstanding her persistent hallucinations. In answering that question the ALJ relied in part on the consultative examination by Dr. Tanya Hays, Ph.D. Hays found Triplett was oriented to person, place, time, and situation; exhibited euthymic affect; fair insight; adequate remote recall; limited recent recall; adequate attention and concentration; ability to perform mathematics; ability to answer simple questions related to making change; poor abstraction; limited judgment; logical and goal oriented thought processes; no appearance of response to internal stimuli; no paranoia or delusional thought processes; and no poverty of speech or disturbances of consciousness.

Hays opined that Triplett, though not exhibiting overt social skill deficits, would be limited in her ability to consistently interact with peers at work, given her history of poor impulse control and mood dysregulation. Triplett was, per Hays, "likely to be capable of following simple instructions" though she might have problems completing tasks that required problem-solving or abstraction. The ALJ crafted an RFC consistent with Hays' report.

4

This court is limited to considering whether the determination that Triplett can work is supported by substantial evidence and Dr. Hays' opinions provided the needed evidentiary basis for the ALJ's assessed RFC. Furthermore, the decision's review of Triplett's records presents an accurate and balanced description of the conflicting evidence in the record. Substantial evidence supports a determination that the Triplett's hallucinations, though persistent, were mild and did not rise to the level of disabling.

**B.   The ALJ Erred under SSR-004p in Relying on the VE's Testimony**

The vocational expert offered three jobs as examples of work Triplett could perform despite the limitations assessed by the ALJ. The VE testified that she could work as an assembler, a cleaner and a silverware wrapper. The ALJ found the VE's testimony was consistent with the Dictionary of Occupational Titles and where the DOT was silent, the expert relied on his training, education and experience. (R. 26). Counsel was allowed to cross-examine the VE but did not inquire into any potential conflict between the jobs described, the DOT and the residual functional capacity.

The plaintiff argues that all three jobs named by the vocational expert, as defined by the Dictionary of Occupational Titles, conflict with the plaintiff's RFC as stated by the ALJ, and that the ALJ has failed to resolve those conflicts.

Social Security Ruling 00-4p provides that "Occupational evidence provided by a VE … generally should be consistent with the occupational information supplied by the DOT." *Id.* But some conflicts between VE testimony and the DOT job descriptions can be expected, given the breadth of jobs covered by and the intrinsic limitations of the DOT. The DOT is not "a definitive authority on job requirements … because DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than

5

their range." *Page v. Astrue*, 484 F 3.d 1042, 1045 (8th Cir. 2007); *Jones v. Chater*, 72 F.3d 81, 82 (8th Cir. 1995). "The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000). As a result, an ALJ sometimes may rely on testimony from a vocational expert that conflicts with the job requirements listed in the DOT.

When there is an apparent conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. The ALJ must inquire as to whether there is any inconsistency between the VE's testimony and the DOT. Because "neither the DOT nor the VE evidence automatically "trumps" when there is a conflict," the ALJ "must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information." SSR 00-4p. What the court needs to see is evidence that if there is a conflict the ALJ was both aware of and resolved the conflict in deciding the case. *Ambriz v. Kijakazi*, No,. 5-20-CV-727-RBF, 2022 WL 855987, at *9 (W.D.Tex. Mar. 23, 2022).

Here, Triplett argues that both the assembler job and the silverware wrapper jobs are not within her RFC because she was limited to understanding, remembering and carrying out simple, routine and repetitive tasks and making only simple work-related decisions regarding changes in the work setting. Triplett argues that the conflict arises because these two jobs each require Level 2 reasoning which she argues is not consistent with her RFC that limits her to simple work. However, this court and other courts in the Fifth Circuit have held that a Level 2, and even a Level 3, reasoning level are not inconsistent with simple work. A limitation to simple, repetitive, and routine tasks "can support work with a reasoning level of two or three." *Smith v. Colvin*, No

313-N, 2014 WL 1407437, at *6 (N.D. Tex. Mar. 24, 2014), *report and recommendation adopted*, 2014 WL 1407440 (N D. Tex. April 1, 2014); *Melton v. Astrue,* No. 2:11CV157-SAA, 2012 WL 1004786, at * 2–3 (N.D.Miss. Mar. 26, 2012) (no conflict in VE testimony that plaintiff, who was limited to "simple, routine, repetitive tasks involving simple work related decisions," could perform work with a reasoning level of two).

Triplett also argues she cannot work as an assembler because the DOT says assemblers frequently work at a bench as a member of an assembly group, working on one or two parts before handing off a unit to another worker, a requirement she argues is inconsistent with her being limited to working with objects, not people, and not performing tandem or group tasks. Triplett then argues she cannot work as a cleaner/housekeeper because the inclusion of a requirement for "rendering personal assistance to patrons" is inconsistent with her interaction restrictions.

The ALJ's questioning of the VE expressly addressed the possibility of conflicts between the VE's opinion and the DOT, and the possibility of his having imposed restrictions not addressed by the DOT, and directed the VE's attention to the tandem tasks and public interaction restrictions. Specifically, the ALJ asked the following:

> Q: Is your testimony consistent with the Dictionary of Occupational Titles, *and to the extent the DOT may be silent on some aspects of your response to my hypothetical, such as tandem tasks or interaction with the public versus coworkers and supervisors, please tell me what you rely on to support your testimony.* R. 96-97

> The VE responded:

> Your honor, I'm basing that on my knowledge, experience and training and having worked, taught, and placed people who are disabled in various job settings in the last 18 years. R. 97.

7

The ALJ expressly addressed the possible impact of Triplett's interaction restrictions on the jobs the VE was tendering, and the VE expressly testified that Triplett could nevertheless do these jobs based on his expertise and experience. The court therefore finds that the ALJ and VE addressed the potential conflict, and the ALJ did not err in relying on the VE's testimony on this issue.

Triplett also argues she cannot perform the silverware wrapper job, arguing that her RFC is inconsistent with the finding in the SCO (Selected Characteristics of Occupations) that the job requires working under hazardous conditions and being in good physical condition. The court is unconvinced that there is any disagreement between the VE, the SCO and the plaintiff's RFC. As the Commissioner points out, the DOT does not include these restrictions. DOT 318.687-018, 1991 WL 672757.

To arrive at the plaintiff's conclusion that the VE's testimony conflicts with the SCO, the court would first have to determine that the ALJ's RFC was erroneous because the ALJ did not restrict the plaintiff from working in hazardous conditions, nor did he place any physical limits on her other than limiting her to light work. The plaintiff argues that it is obvious, given her diagnosis of non-compaction cardiomyopathy that Triplett should have been restricted from working around hazardous conditions and lacks the physical fitness to do that job. However, the plaintiff fails to point to any evidence supporting this contention, much less the type of evidence which would compel the ALJ to add these restrictions to the RFC.

Accordingly, the court finds no error in the ALJ's reliance on the VE's testimony.

C. **The ALJ Erred in Not Acknowledging Obvious Physical Problems**

Next, Triplett argues the ALJ erred when he failed to acknowledge and assign limitations based on the history in the record indicating she is blind in one eye and deaf in one ear. Triplett

admits these conditions were not included as part of her claim that she was disabled. Her hearing loss is referenced in Dr. Drumheller's report in early 2019. The alleged blindness is referenced in a later consultative examination, but there is no diagnosis in the record.

Triplett argues that if a physical consultative examination had been ordered these conditions and additional impairments could have been established. She further argued these conditions would have impacted her ability to perform certain jobs, and the RFC was therefore defective for not including any limits for these conditions.

Under 20 C.F.R. § 416.912(a), however, the Social Security Administration will only consider those impairments "you say you have or about which we receive evidence"). The defendant was not required to investigate these conditions. The plaintiff's blindness is referenced but not diagnosed in the record, and there is no evidence in the record of Triplett having trouble with either hearing or communicating with medical providers or during the hearing. Given that the plaintiff's application did not allege either of these conditions as a potential source of limitation, the court finds the plaintiff has not shown that any error was prejudicial.

### D.  Per SSR 85-16 Should Have Recognized Clues to Greater Limits

Finally, the plaintiff argues the ALJ did not properly assess her mental limitations under SSR 85-16. For instance, she argues the ALJ relied on the fact that her relatives had her babysitting for young children to infer that her hallucinations and paranoid thinking were not a severe problem. While that is not the only inference that could be drawn from her babysitting for family, the records concerning both her hallucinations and paranoid thinking were conflicting. Sometimes Triplett reported seeing shadows and thinking someone was calling her name, and

sometimes she reported that she was not experiencing any hallucinations.[2]

Sometimes the records show some paranoid thinking and at other times noted the absence of this problem. Regardless, the records do not document any bizarre or threatening behavior that would indicate Triplett would be a threat to her or others because of her hallucinations or paranoid thoughts.

The resolution of the conflicts in the record and the inferences to be drawn from the evidence is the task assigned to the ALJ. This court may not reweigh the evidence or substitute its judgment for that of the ALJ. While the plaintiff raises other points in this argument, the court finds each is a request to reweigh the evidence. As discussed at length above, the ALJ discussed the record in detail in assessing Triplett's mental capacity. The other arguments presented under this assignment amount to nothing more than the plaintiff's disagreement with the ALJ's decision. Because substantial evidence supports the ALJ's determination of Triplett's residual functional capacity, even though other evidence in the record would also support more favorable findings, the court must affirm the agency's determination.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the decision of the Commissioner should be, and it is hereby affirmed.

**SO ORDERED AND ADJUDGED** this the 5th day of November, 2024.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE

---

[2] Her CCS notes from Dec 21, 2022 notes Triplett reported "some hallucinations, but they were nothing out to the norm and that they were decreasing, and that she "has had minor issues related to hallucination, but ind. reported no problems in day-to-day activities." R. 711.